IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROGER L. F., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) Case No. 22-cv-00184-SH |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
|     Defendant. | ) ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Roger L. F. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.  Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the

Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the

Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Background and Procedural History

Plaintiff applied for Title II disability benefits on October 30, 2019. (R. 193-94.) In his application, Plaintiff alleged he has been unable to work since December 25, 2018, due to chronic obstructive pulmonary disease ("COPD"), beginning emphysema, pre-diabetes, high blood pressure, sleep apnea, heart disease, and circulation problems. (R. 193, 233.) Plaintiff was 58 years old at the time of the ALJ's decision. (R. 34, 193.) Plaintiff has some college education and past relevant work as a retail departments manager, telephone solicitor, and customer service representative, instructor. (R. 60, 234.)

Plaintiff's claim for benefits was denied initially and upon reconsideration. (R. 97-100, 107-12.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on June 16, 2021. (R. 39-64, 113-14.) The ALJ then issued a decision denying benefits and finding Plaintiff not disabled. (R. 18-34.) The Appeals Council denied review on February 16, 2022 (R. 6-10), rendering the Commissioner's decision final. 20 C.F.R. § 404.981. Plaintiff now appeals.

## III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 30, 2024. (R. 21.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 25, 2018. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) COPD; (2) obesity; and (3) congestive heart failure. (R. 22-25.) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 25-26.)

After considering certain evidence, the ALJ concluded that Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a)" with the following limitations:

> No climbing of ladders, ropes, or scaffolds. Stooping, crouching, crawling, kneeling, balancing, and climbing of ramps or stairs can be done occasionally. No exposure to elevated levels of fumes, dust, gasses, odors, poor ventilation, or other respiratory irritants (elevated level means concentrations in excess of that normally found in modern office buildings or light manufacturing facilities).

(R. 26.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 26-33.) At step four, the ALJ found Plaintiff was able to perform his past relevant work as a customer service representative, instructor. (R. 33-34.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 34.)

## IV.   Issues

Plaintiff raises two allegations of error in his challenge to the denial of benefits, claiming: (1) that the RFC was not supported by substantial evidence because the ALJ failed to properly consider the severity of Plaintiff's conditions, ignored evidence, and improperly evaluated medical opinions (ECF No. 11 at 7-11); and (2) that the ALJ's step-four findings were deficient at phases two and three of the analysis required by *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996) (*id.* at 11-13). Having considered Plaintiff's arguments, the undersigned finds no error in the ALJ's decision.

## V.   Analysis

### A.   The RFC

At step four of the sequential evaluation, the claimant must "show 'that [an] impairment or combination of impairments prevents him from performing his past work.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Grogan*, 399 F.3d at 1261). Before proceeding to step four, however, the ALJ first determines the claimant's

4

RFC. A claimant's RFC accounts for his impairments and related symptoms, which may cause physical or mental limitations that affect what a claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1). The RFC is what's left—"the most [the claimant] can still do despite [his] limitations." *Id.* The Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record. *Id.* § 404.1520(e).

In assessing RFC, the ALJ must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence" and must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Categories of evidence include (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings. 20 C.F.R. § 404.1513(a). Plaintiff argues that the ALJ erred in his consideration of the objective medical evidence, Plaintiff's limitations, and Dr. Sudip Tripathy's medical opinion.

### 1. Objective Medical Evidence

Plaintiff first points to the severity of his COPD diagnosis—and his attendant treatment—as evidence that his ability to "work at a job for 8 hours a day, 5 days a week is not realistic . . . ." (ECF No. 11 at 8.) The severity of Plaintiff's diagnosis, however, does not necessarily result in RFC limitations that would prevent Plaintiff from engaging in all work activities.

#### a) Severity of Plaintiff's COPD

As it relates to his diagnosis, Plaintiff argues his doctors have determined that his "COPD is at the end stage and referred Plaintiff for a lung transplant." (ECF No. 15 at 8.) Plaintiff cites information from the website WebMD regarding the attributes of stage 4

5

COPD. (*Id.*) Plaintiff then asserts that the ALJ's findings are not realistic and that the ALJ did "not consider the actual evidence in this case." (*Id.*)

It is accurate to state that Plaintiff has been diagnosed with severe, end-stage COPD, and that he was at least referred for a lung transplant evaluation. (R. 521, 524, 666.) However, the ALJ considered this evidence. (*See* R. 29 (noting that in January 2021, Dr. Jameson Pelton indicated that Plaintiff's pulmonary function tests were indicative of severe/end-stage COPD), 30 (citing Dr. Nadim Daher's notation that Plaintiff was diagnosed with "very severe obstructive lung disease" after pulmonary function testing), *id.* (noting Plaintiff was referred for a lung transplant evaluation but that "the lung transplant center declined the referral due to the claimant being overweight").) The ALJ did not fail to consider the "actual evidence" as Plaintiff argues—he simply weighed it differently than Plaintiff would. The undersigned is not permitted to reweigh evidence adequately considered by the ALJ, *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015), even if it might have ultimately weighed such evidence differently, *White*, 287 F.3d at 908.

Here, while the ALJ considered the severity of Plaintiff's COPD (22,[1] 29-30), he balanced this severity against Plaintiff's hearing testimony (R. 27), Plaintiff's recent smoking habit (R. 30, 32), limitations demonstrated over the longitudinal medical record (R. 27-31[2]), and the record medical opinions (R. 31-33). The mere fact that Plaintiff has end-stage COPD does not necessitate particular functional limitations not otherwise borne out in the record. *See Vickie W. v. Berryhill*, No. 17-CV-252-JFJ, 2018 WL

---

[1] Finding it to be a severe, medically determinable impairment at step two. (R. 22.)

[2] Which, at times, found Plaintiff's pulmonary functioning to be unremarkable upon examination. (*Id.*) For example, the ALJ noted that on numerous visits between 2019 and 2021 Plaintiff had relatively normal pulmonary examinations, including normal effort and no respiratory distress. (R. 28-30.)

4677776, at *3 (N.D. Okla. Sept. 28, 2018) ("RFC findings and hypothetical must be supported by substantial evidence and should include only those limitations borne out by the record"). Similarly, the fact that Plaintiff's COPD was severe enough to cause physicians to recommend evaluating him for a lung transplant does not alone speak to any specific RFC limitation. What the record must demonstrate is <u>functional</u> limitations that result from Plaintiff's severe impairment. *See Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 622 (10th Cir. 2020) (unpublished) ("without any specific functional limitations, there is no obvious impact on the RFC, as the diagnoses alone do not automatically establish [the claimant] was disabled").[3] Plaintiff has not done this.

Plaintiff's citation to a WebMD article regarding the problems "most people" face when suffering from end-stage COPD also does not help his argument. *See Whitehead v. Berryhill*, No. CIV-17-1353-G, 2019 WL 1407435, at *5 (W.D. Okla. Mar. 28, 2019) ("Reweighing the evidence, and assessing unspecified functional limitations based on Plaintiff's recitation of the evidence and the description of Plaintiff's condition featured on WebMD, would amount to substituting the court's judgment for that of the Commissioner in a manner inconsistent with Tenth Circuit case law"). What other people may go through is irrelevant to Plaintiff's individual functional capabilities. Plaintiff points to nothing that persuades the undersigned the ALJ lacked substantial evidence to support the RFC assigned. (R. 26.)

### b)   Plaintiff's Nebulizer Use

Plaintiff also claims the ALJ ignored evidence of his nebulizer use when crafting the RFC, asserting it "has been used at various times in the record three, four and six times

---

[3] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

per day." (ECF No. 11 at 8.) Plaintiff then asserts it "is probable that a patient like the Plaintiff would have to use the Nebulizer on unscheduled times during the workday." (*Id.*) But Plaintiff points to no basis in the record for these arguments.

Repeatedly in his Statement of Facts, Plaintiff's counsel implies or states that Plaintiff must have been using the nebulizer multiple times per day. (*See, e.g.*, *id.* at 3 (noting "use of Nebulizer every 8 hours"), 4 (claiming that the "progress notes state that the Plaintiff uses a Nebulizer every 8 hours"), 6 (noting nebulizer use "every 6 hours").) These record citations, however, are simply lists of Plaintiff's prescriptions stating how often the nebulizer can be used, which generally was "every 8 [or 6] hours <u>as needed for Shortness of Breath</u>." (R. 453, 466, 473, 481, 556, 674 (emphasis added).) Plaintiff's brief contains no indication that he actually uses the nebulizer at the maximum rate of every 6-8 hours (or 3-4 times per day).[4] In any event, even if Plaintiff had to use a nebulizer once every 8 hours (or, at most, once every 6), he has offered no evidence of how this would prevent him from completing an 8-hour workday with normal breaks.[5]

Second, contrary to Plaintiff's claims, the ALJ <u>did</u> consider Plaintiff's nebulizer use in his RFC analysis. (*See* R. 27 (noting Plaintiff testified he "has to put on air" when he becomes winded from sitting upright or standing too long), 29 (noting Plaintiff's use of

---

[4] Although not cited in Plaintiff's brief, various times in the record Plaintiff references "multiple breathing treatments each day" (R. 243) or that he takes "from 4-6 breathing treatments per day" (R. 267, 273). Plaintiff is prescribed multiple inhalers, not just the nebulizer, and it is unclear which medicines Plaintiff is referring to when he references "breathing treatments." As Plaintiff could only take the nebulizer once every 8 hours (or 3 times per day) for much of the record period and every 6 hours (or 4 times per day) in the later period, his reference to breathing treatments appear to include more than just the nebulizer.

[5] Like Plaintiff's citation to WebMD, his reliance on a website to explain to the Court how his nebulizer medication works has no bearing on Plaintiff's individual ability to function in an ordinary work setting, considering that he cites to no portion of the record demonstrating how frequently he himself uses the medication, or how he uses it. (ECF No. 11 at 8.)

8

nebulizers at home in July 2020), 30 (noting Plaintiff's use of albuterol inhalers/nebulizers to provide good control for his COPD in September 2019).) As the ALJ did not ignore Plaintiff's use of this medication, the Court finds any reconsideration of this analysis would be a reweighing of the evidence.

It was also not the duty of the ALJ "to question the Plaintiff about it or develop evidence regarding the use of the Nebulizer" as Plaintiff suggests. (ECF No. 11 at 8.) Plaintiff was represented by counsel at the hearing (R. 39), and the "ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored" and to "identify the issue or issues requiring further development," *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). The ALJ did not err by declining to dig deeper into an area Plaintiff's counsel did not address. As there was complete and detailed evidence sufficient for the ALJ to make a determination regarding Plaintiff's disability, 20 C.F.R. § 404.1512(a)(2), the Court finds no error.

### 2. Limitations in Daily Activities

Additionally, in an undeveloped argument, Plaintiff maintains that the "medical evidence in this case establishes that the Plaintiff cannot perform work[-]like activities for eight hours," since he "can barely take a shower, go grocery shopping and cannot cook a meal or drive a car." (ECF No. 11 at 9.) However, he cites to no portion of the administrative record or any case law and does not otherwise develop this argument. (*Id.*) The Court notes that the ALJ considered Plaintiff's statements that his impairments cause him trouble when he showers (R. 28), prevent him from cooking or regularly driving (R. 27), and cause him to be in bed most of the day (*id.*). A reconsideration of such evidence by the undersigned would amount to reweighing evidence. Plaintiff's arguments in this regard, therefore, are also rejected.

### 3. The ALJ's Evaluation of Dr. Tripathy's Opinion

Finally, Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ "failed to follow" the opinion of Dr. Tripathy in developing the RFC.[6] (ECF No. 11 at 9-11.)

When considering a physician's medical opinion, an ALJ does not defer or give any specific evidentiary weight to the opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the "persuasiveness" of such opinion by considering five factors. *Id.* § 404.1520c(a) & (c).[7] Of those five factors, the ALJ must always explain how he considered only two—supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability is internal to the medical source—"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Consistency is more external—"The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2). The ALJ is not required to explain how the other factors were weighed absent two or more

---

[6] Plaintiff sometimes phrases this argument as a failure to follow the VE's testimony. (*Id.* at 9.) At the hearing, the ALJ's first hypothetical to the VE matched the ultimate RFC and the VE testified Plaintiff would be able to return to his past relevant work. (R. 61.) Next, the ALJ presented a hypothetical to the VE that was "based in substantial part on Dr. Tripath[y]'s medical source statement . . . ." (R. 62.) The VE indicated that if Plaintiff had such limitations, he would be unable to complete a traditional, 40-hour work week, thereby preventing "competitive employment." (*Id.*)

[7] These factors include (i) the supportability of the opinion; (ii) the consistency of the opinion; (iii) the medical source's relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (iv) the medical source's specialization; and (v) any other factors that tend to support or contradict the opinion. *Id.* § 404.1520c(c)

10

differing medical opinions about the same issue that are equally well-supported and consistent with the record.[8] *Id.* § 404.1520c(b)(2)-(3).

Dr. Tripathy completed a Physical RFC Assessment of Plaintiff in March 2021. (R. 629-36.) Prior to 2019, when Plaintiff lost his insurance, Dr. Tripathy was Plaintiff's primary care physician. (R. 51, 380, 416.) In his opinion, Dr. Tripathy found that Plaintiff could occasionally and frequently lift/carry 10 pounds; stand and/or walk less than 2 hours in an 8-hour workday; and sit for less than 6 hours in an 8-hour workday, with a notation indicating he could sit for only 2-3 hours. (R. 630.) Dr. Tripathy also found that Plaintiff could frequently climb ramps/stairs/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl, and indicated that he could not "crawl, crouch, [or] kneel for long periods of time." (R. 631.) Further, Dr. Tripathy opined that Plaintiff should avoid all exposure to extreme cold and heat, wetness, humidity, hazards, and fumes/odors/dusts/gasses/poor ventilation, and that he should avoid concentrated exposure to noise and vibration. (R. 633.) Ultimately, Dr. Tripathy found Plaintiff's severe COPD and coronary artery disease caused his limitations, specifically noting that Plaintiff experienced shortness of breath and chest pain with even "minimal exertion." (R. 634.)

The RFC adopted by the ALJ incorporated the majority of these limitations. (*Cf.* R. 26 *with* R. 630-33.) In fact, many of the postural and environmental limitations set forth in the ALJ's RFC are just-as, or more, restrictive than those articulated by Dr. Tripathy. (*Id.*) Plaintiff's primary point of contention appears to come in the ALJ's decision not to adopt Dr. Tripathy's specific sitting limitations (R. 630) or the

---

[8] Because Plaintiff has not pointed the Court to these types of "differing medical opinions" in the record, it rejects Plaintiff's arguments that the ALJ should have "articulated the medical relationship factors . . . ." (ECF No. 11 at 10.)

"unscheduled breaks" that the second hypothetical accounted for (R. 62).[9] The undersigned finds no error in the ALJ's evaluation of Dr. Tripathy's opinion.

As the Commissioner notes, the ALJ dedicated almost two pages of his decision to the analysis of Dr. Tripathy's opinions. As part of this consideration, the ALJ discussed Dr. Tripathy's findings, assessed the supporting narrative Dr. Tripathy provided, and evaluated Plaintiff's treatment records with Dr. Tripathy. (R. 31-32.) Further, the ALJ noted:

> Dr. Tripathy provides substantial support for his medical opinion; however, the support provided is not fully consistent with what the evidence of record, as a whole has shown. The claimant testified and the claimant's counsel confirmed at the hearing that the claimant last received emergency/hospital treatment for COPD exacerbation . . . on July 18, 2019 (Exhibit 6F). The physical consultative examination in this case, performed by Dr. Paz on December 23, 2019, was very close to full normal (Exhibit 5F). Dr. Tripathy's medical opinion also has some degree of internal inconsistency. Where, he listed all frequent postural movements, but then in narrative stated that the claimant is unable really to crawl, crouch, or kneel for long periods, and he would not recommend the claimant climb up ladders or scaffolds due to poor lung function.

(*Id.*) Ultimately, the ALJ determined Dr. Tripathy's opinions were unpersuasive. (*Id.*)

Plaintiff argues the ALJ erred by "picking and choosing" from among record evidence to discount Plaintiff's complaints and, therefore, Dr. Tripathy's opinions. (ECF No. 11 at 10.) But this was not the case. Plaintiff again points to his diagnosis of end stage/severe COPD, lung transplant referral, and nebulizer use as evidence that the ALJ must have ignored portions of the record while evaluating Dr. Tripathy's opinion. (*Id.*) Yet, as discussed above, the ALJ considered this evidence. *See supra.* The same is true of Plaintiff's pulmonary testing, which Plaintiff points to as supporting Dr. Tripathy's

---

[9] The ALJ limited Plaintiff to a reduced range of sedentary work. (R. 26.) Sedentary work requires the ability to, among other things, sit for "generally . . . about 6 hours of an 8-hour workday." SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996).

opinion. (*Id.*) The ALJ was clearly aware of this testing, citing it multiple times throughout his decision (R. 25-26 (outlining and discussing the results of these tests at step three), 29 (noting that the pulmonary function studies confirmed COPD).) As the ALJ agreed with the findings of the studies and found Plaintiff's COPD to be severe (R. 22), and as the studies cited demonstrate no specific functional limitations in the RFC sense (R. 436-41 (measuring the actual functionality of Plaintiff's lungs)), the undersigned finds no error.

Finally, Plaintiff maintains that the ALJ improperly focused on evidence from 2017 and 2018 when discussing Dr. Tripathy's opinion. (ECF No. 11 at 10.) The records from 2017 and 2018, however, were pertinent to the supportability of Dr. Tripathy's opinion because this is when Dr. Tripathy treated Plaintiff. (R. 32.) In any event, the ALJ did not solely rely on such evidence. In his discussion of the consistency of the opinions, he highlighted the physical consultative examination performed in late 2019 (*id.*) and noted the inconsistency of Dr. Tripathy's opinions with the record as a whole, which included evidence from 2017 through 2021 (R. 27-31). As the ALJ was not required to explain the additional factors set out in 20 C.F.R. § 404.1520c(c),[10] his evaluation was adequate.

**B. The ALJ's Step Four Analysis**

In his opinion, the ALJ ended the sequential analysis at step four, finding Plaintiff capable of performing his past relevant work ("PRW") as a customer service representative, instructor. (R. 33-34.) Taking issue with the ALJ's step-four evaluation, Plaintiff claims "the ALJ did not attempt to perform the analysis that is required pursuant

---

[10] "We may, <u>but are not required to</u>, explain how we considered the factors in paragraphs (c)(3) through (c)(5) . . . ." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). As the Commissioner notes (ECF No. 12 at 11), however, the ALJ <u>did</u> consider many of the factors listed in 404.1520c(c), such as the length, frequency, and nature of Plaintiff's relationship with Dr. Tripathy (R. 28, 31-32).

to" *Winfrey*. (ECF No. 11 at 11-13.) As the undersigned finds the analysis proper, it disagrees.

At step four, an ALJ is to consider the claimant's RFC and assess his ability to return to his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ is required to make findings in three phases. *Winfrey*, 92 F.3d at 1023. In phase one, the ALJ evaluates the claimant's mental and physical RFC. *Id.*

In phase two, the ALJ examines the demands of the claimant's past relevant work. *Id.* Here, the ALJ must obtain adequate factual information about the work demands that have a bearing on Plaintiff's medically established limitations. *Id.* at 1024. The ALJ can obtain this information from numerous sources, including the claimant, the VE, or the Dictionary of Occupational Titles ("DOT"). *See* 20 C.F.R. § 404.1560(b)(2); *see also Best-Willie v. Colvin*, 514 F. App'x 728, 737-38 (10th Cir. 2013) (unpublished).

In phase three, the ALJ ascertains "whether the claimant has the ability to meet the job demands found in phase two despite the . . . [RFC] limitations found in phase one." *Winfrey*, 92 F.3d at 1023 (citing SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). "In making the phase-three findings, an 'ALJ may rely on information supplied by the VE at step four,' but 'the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform [his] past relevant work.'" *Zaricor-Ritchie v. Astrue*, 452 F. App'x 817, 825 (10th Cir. 2011) (unpublished) (quoting *Winfrey*, 92 F.3d at 1025). It is the claimant's burden at step four to show that he is unable to perform his past relevant work "*both* as [he] actually performed that work in the past *and* as it is generally performed in the national economy." *Adams v. Colvin*, 616 F. App'x 393, 394 (10th Cir. 2015) (unpublished) (emphasis in original).

14

### 1. Phase One

As noted above, at phase one, the ALJ is to determine a claimant's RFC. The ALJ's discussion of Plaintiff's functional capacity has already been substantially addressed and found to be without error. *See supra.*

### 2. Phase Two

At phase two, Plaintiff argues that "nothing in the ALJ's decision suggests [he] considered the actual requirements of the Plaintiff's past relevant work, and [he] certainly made no findings as to those requirements," ultimately claiming the ALJ "made no attempt to perform phase two of the analysis . . . ." (*Id.*) Plaintiff's statements are contrary to the plain language of the ALJ's decision and its step-four discussion.[11]

As discussed above, at phase two, the ALJ determines factual information about a claimant's PRW from various sources. *See* 20 C.F.R. § 404.1560(b). The regulations are clear that in "[d]etermining whether [a claimant] can do [his] past relevant work"

> [w]e will ask [the claimant] for information about work [he] ha[s] done in the past. . . . We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether [the claimant] can do [his] past relevant work, given [his] residual

---

[11] To the extent Plaintiff is suggesting that the ALJ was under an obligation to make specific findings regarding how Plaintiff's PRW was "actually performed," the undersigned finds this argument unpersuasive. (ECF No. 11 at 12.) An ALJ is obligated to determine whether Plaintiff is capable of performing his PRW as actually performed <u>or</u> as generally performed. *See* SSR 82-61, 1982 WL 31387, at *1-*2 (Jan. 1, 1982) ("if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled'"); *see also Roland v. Colvin*, No. CIV-13-1298-D, 2015 WL 1508317, at *3 (W.D. Okla. Mar. 31, 2015) ("regardless of any error in failing to discuss the demands of Plaintiff's [PRW] as it was actually performed, if the ALJ's phase two findings are sufficient to establish the demands of any job as it is generally performed, then no remand or reversal is required"). Because the ALJ found Plaintiff capable of performing his PRW as generally performed, the Court will not reverse and remand for any perceived failure to determine the actual requirements of Plaintiff's PRW.

> functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

*Id.* The ALJ's assessment of Plaintiff's PRW followed these considerations.

In his decision, the ALJ discussed Plaintiff's PRW, as described by Plaintiff in his *Disability Report* (R. 33 (citing Exhibit 3E)), his *Work History Report* (*id.* (citing Exhibit 6E)), and his work background/resume (*id.* (citing Exhibit 16E)). The ALJ identified Plaintiff's PRW as a customer service representative, instructor. (R. 33.) *See* DOT § 239.227-010, 1991 WL 672221 (4th ed. 1991). He obtained adequate factual information about the functional demands of Plaintiff's PRW as generally performed by noting the DOT number, the work's exertional level, and the work's specific vocational preparation level ("SVP").[12] (*Id.*) Moreover, at the hearing, the ALJ asked the VE about Plaintiff's PRW, and the VE testified to the job's exertional level, SVP level, and skill requirement. (R. 60.)

In light of this discussion, it is unsupportable for Plaintiff to suggest that the ALJ made no findings regarding the requirements of Plaintiff's PRW. *See Teresa L. C. v. Kijakazi*, No. 21-CV-207-JFJ, 2022 WL 3011132, at *8-9 (N.D. Okla. July 29, 2022) (consideration of a claimant's work history report and VE hearing testimony was

---

[12] Reference to the DOT provides substantial factual information about the job's physical, mental, and environmental requirements.

sufficient to determine the requirements of PRW). The undersigned finds no error at phase two.

### 3. Phase Three

Lastly, at phase three, Plaintiff asserts the ALJ merely asked "the [VE] if the claimant could perform [his] past relevant work" and relied "solely on that testimony to find that the Plaintiff was not disabled at step four." (ECF No. 11 at 12-13.) But this is not what the ALJ did.

After ascertaining the requirements of Plaintiff's PRW from Plaintiff's reports, the DOT, and the VE, the ALJ specifically "compare[ed] the claimant's residual functional capacity with the physical and mental demands of" Plaintiff's PRW. (R. 34.) As part of his analysis, the ALJ—as contemplated by § 404.1560—considered the VE's testimony "in response to a hypothetical question about whether a person with the physical and mental limitations imposed by [Plaintiff's] medical impairment(s) can meet the demands of [his] previous work . . . ." 20 C.F.R. § 404.1560(b)(2); (R. 34, 61 (noting that the VE classified the job as sedentary—as generally performed—and that this fell within the limited range of work set forth in the RFC).)

Quoting the VE's testimony "in support of [the ALJ's] own findings at phases two and three of the analysis" was proper. *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003). It does not mean that the ALJ delegated the assessment to the VE such that it was performed only in the VE's head.[13] *Id.* Nor did the ALJ rely "solely" on the VE's testimony. (ECF No. 11 at 12.) The ALJ explicitly noted that he "considered the claimant's

---

[13] The ALJ's lack of delegation to the VE is further shown in his treatment of the VE's testimony that "the claimant could perform past work as a telephone solicitor, DOT Code 299.357-010." (R. 34.) The ALJ excluded this PRW—despite the VE's testimony—as he found its light exertion requirement was inconsistent with the RFC. *Id.*

testimony[] [and] reviewed the earnings record and the work history," finding that such review led him to accept the VE's testimony. (R. 34.) This is the opposite of the sort of delegated evaluation that *Winfrey* prohibits. Rather, it is the type of evaluation explicitly allowed by § 404.1560(b).[14]  The Court finds no error.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 16th day of August, 2023.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[14] In any event, many courts have found no error even when an ALJ primarily relies on the VE's testimony for his phase-three finding, so long as the ALJ does not abdicate his decision-making responsibility. *See, e.g.*, *Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (unpublished) (finding step-four analysis based on the VE's response to a hypothetical question at hearing sufficient); *Best-Willie*, 514 F. App'x at 738 (perceiving "nothing improper with the ALJ's analysis" when the ALJ "posed a hypothetical to the [VE]" at the hearing—including the claimant's limitations—"asked whether such an individual could perform [the claimant's] past relevant work," and noted the expert's testimony when concluding that the claimant could perform her PRW); *Adcock v. Comm'r, SSA*, 748 F. App'x 842, 847-48 (10th Cir. 2018) (unpublished) (same); *Zaricor-Ritchie*, 452 F. App'x at 825 ("[i]n his written decision, the ALJ relied on the VE's testimony, which was consistent with the information in the *Dictionary of Occupational Titles*, in comparing [the claimant's] RFC with the physical and mental demands of the dishwashing job and found that she could perform that job . . . . Such reliance is entirely permissible").